UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
DENNIS BROWN,

          Plaintiff,

  -against-

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

-------------------------------------------------------------------x

**MEMORANDUM & ORDER**

06-CV-3174 (ENV) (MDG)

**VITALIANO, D.J.**

  Plaintiff Dennis Brown seeks review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits under the Social Security Act. The parties have filed cross-motions for judgment on the pleadings. Plaintiff argues that the Commissioner made several errors in his decision and requests that the decision be reversed and his claim remanded for the calculation of benefits, or, in the alternative, for further proceedings. The Commissioner counters that the decision was supported by substantial evidence and that no legal error was made. For the reasons set forth below, the Court denies the Commissioner's motion for judgment on the pleadings and grants Brown's cross-motion to the extent that this case is remanded for further administrative proceedings.

## I. BACKGROUND

### A. Procedural History

  Brown filed his application for disability benefits on June 11, 2001, alleging a disability onset date of January 19, 2000, when he claims he was injured lifting a heavy bag of mail while working as a letter carrier for the United States Postal Service ("USPS"). His application was

denied by the Social Security Administration ("SSA"). After appealing, Brown had an initial hearing before an administrative law judge on March 5, 2004 and was denied benefits, but this decision was vacated and remanded by the Appeals Council. Another hearing was held by Administrative Law Judge Kenneth G. Levin (the "ALJ"), who issued a decision, again denying benefits, on December 6, 2005. (Tr. 13-22.) The hearing record included testimony from Brown, SSA medical expert Warren Cohen, M.D., and SSA vocational expert Mark Ramnauth; Dr. Cohen's testimony was based on a review of Brown's medical records and did not include a physical examination of Brown. The ALJ's decision became final on April 28, 2006, and this appeal followed.

### B. Plaintiff's Medical History

The following facts are drawn from Brown's administrative record. After his initial back injury, on January 19, 2000, Brown went to the emergency room and then began treatment with neurologist Leonard Langman, M.D. On February 7, 2000, a magnetic resonance imaging ("MRI") scan showed a herniatic disc in his neck, between the fifth and sixth cervical vertebrae ("C5-6"), with a bulging disc between the sixth and seventh cervical vertebrae ("C6-7"), and left-sided narrowing of the neural foramen (an opening between the vertebrae that allows for the passage of nerves that connect the spinal cord to other parts of the body) at C5-6. The MRI scan also showed a herniated disc between the fourth and fifth lumbar vertebrae ("L4-5"), impinging upon the thecal sac (a membrane containing cerebrospinal fluid).

Brown began physical therapy on February 8, 2000 with Dr. Leo Batash, who specializes in Physical Medicine and Rehabilitation and is listed as a Disability Analyst and Fellow of the American Board of Disability Analysts. Dr. Batash determined that Brown was "temporarily

2

totally disabled" and prescribed physical therapy three times a week for six to eight weeks. Dr. Langman also deemed Brown "totally disabled ... at this time," in a report on April 17, 2000.

On April 18, 2000, Brown was driving his automobile when a truck hauling a large motor boat struck the driver's side at a perpendicular angle. He had to be cut out of the car by emergency personnel. Brown suffered a concussion, additional trauma to his neck and back, and trauma to both knees; he later had arthroscopic surgery to repair damage to his left knee. MRI scans performed on Brown's back and neck in May 2000 revealed disc dessication throughout the cervical spine, a "left paracentral C4-5 disc herniation extending into the left neural foramen, and desiccation and bulging at the L4-5 intervertebral disc level." Another report noted a "large left lateral disc protrusion" at C4-5, which "deforms the dural sac, touches the cord, narrows the left lateral recess and neuroforamen."

Brown continued seeing Dr. Batash for physical therapy throughout the time period covered by the record before the Court. The therapy consisted of electrical muscle stimulation, hot packs, therapeutic massage, therapeutic exercise, and ultrasound; Brown also used a transcutaneous electrical nerve stimulation device at home. The cumulative impact was beneficial, but by the time of the hearing in December 2005, Brown testified that his workmen's compensation (which appears to have been awarded as a result of the January 2000 workplace injury) forced a reduction in the frequency of his threapy from three times a week to two times a month.

Brown's reported symptoms also included numbness, tingling, and shooting pains in his extremities. Nerve conduction studies performed on March 26, 2002 indicated mild lumbar radiculopathy (an abnormality at the nerve root, along the spine) at L4-5 on the left side, and could not rule out the possibility of mild cervical radiculopathy at C5-6 on the left side. Another

set of nerve conduction studies performed on April 30, 2004 by Dr. Langman's office indicated evidence of a left L4-5 radiculopahy and bilateral L5-S1 radiculopathies.

Both Dr. Langman and Dr. Batash prepared assessments of Brown's residual functional capacity. Dr. Langman's report, from March 2003, stated that Brown could lift no more than five pounds, could not stand or walk for more than two hours per day, could not sit for more than 15-25 minutes without interruption and 25 minutes total per day, and could not walk for more than two blocks without interruption or three blocks total. Dr. Batash's report on April 8, 2005 stated that Brown could lift no more than five pounds occasionally, could stand and walk no more than an hour and 15 minutes without interruption and two hours total per day, and could not sit for more than 10 to 15 minutes without interruption and two hours total per day.

Brown received one-time evaluations from a number of other health care providers, including several at the behest of the USPS and the United States Department of Labor regarding his claim for worker's compensation, as well as other examinations he received in support of an insurance claim arising from the motor vehicle accident. None of these providers treated Brown on a regular basis, though one of the doctors Brown saw regarding the car insurance claim, Dr. Richard Radna, examined Brown on multiple occasions from 2000 to 2002, concluding that Brown's injuries were permanent and that he was totally disabled. None of these examinations generated any additional MRI scans, nerve conduction studies, or other diagnostic lab reports. The overall range of diagnoses and prognoses varied widely, including, at one extreme, a doctor in August 2000 concluding that Brown's neck and back conditions had "resolved," and, at the other extreme, two doctors, in July 2000 and October 2002, recommending surgical intervention.

## II. DISCUSSION

In reviewing of a denial of disability benefits under 42 U.S.C. §§ 405(g), the Commissioner's determination will be reversed only if "there is a reasonable basis for doubt whether the ALJ applied correct legal principles," or if it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987). The SSA has promulgated a five-step sequential analysis that an ALJ must use to determine whether a claimant qualifies as disabled. See, e.g., Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999). First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, if the claimant is not engaged in substantial gainful activity, the ALJ must determine whether the claimant has a "severe" impairment that limits his work-related activities. 20 C.F.R. § 404.1520(a)(4)(ii). Third, if such an impairment exists, the ALJ evaluates whether the impairment meets or equals the criteria of an impairment identified in the Commissioner's appendix of listed impairments. 20 C.F.R. § 404.1520(a)(4)(iii). Fourth, if the impairment does not meet or equal a listed impairment, the ALJ must resolve whether the claimant has the residual functional capacity to perform his past relevant work.[1] 20 C.F.R. § 404.1520(a)(4)(iv). This step requires that the ALJ first make an assessment of the claimant's residual functional capacity generally. 20 C.F.R. § 404.1520(e); id. § 404.1545. Fifth, if the claimant cannot perform his past work, the ALJ determines whether there is other work that the claimant could perform. 20 C.F.R. § 404.1520(a)(4)(v). In making his determination by this process, the Commissioner must consider four factors: "'(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability

---

[1] Under the regulations, "past relevant work" is defined as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 404.1560(b)(1).

5

testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience.'" Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The claimant bears the burden of proof as to the first four steps. See, e.g., Balsamo v. Chater, 142 F.3d 75, 80 (2d Cir. 1998). If the claimant proves that his impairment prevents him from performing past relevant work, the burden shifts to the Commissioner at the final step. Id. In the fifth step analysis, the Commissioner must show that the claimant retains the residual functional capacity to perform a certain category of work, such as light work or sedentary work, and that such work is available in the national economy. Curry v. Apfel, 209 F.3d 117, 122-23 (2d Cir. 2000). SSA regulations have subsequently limited the step five burden on the Commissioner, removing the requirement that the Commissioner show residual functional capacity, see 20 C.F.R. § 404.1560(c)(2), and these regulations "abrogated Curry v. Apfel at least in cases where the onset of disability was after the regulations were promulgated on August 26, 2003." Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009). Brown's onset of diability was in 2000, however, and thus his case must be decided under the Curry standard. See, e.g., Ramos v. Astrue, No. 09-CV-3030, 2010 WL 3325205, at *6 (E.D.N.Y. 2010).[2]

After reaching the fifth step of the SSA analysis,[3] the ALJ concluded that Brown was not disabled and retained the residual functional capacity to perform sedentary work. "Sedentary

---

[2] The Second Circuit "decline[d] to reach the issue" of whether the 2003 regulations apply retroactively to cases, like Brown's, where the onset of disabiltity predated the promulgation of 20 C.F.R. § 404.1560(c)(2). See Poupore, 566 F.3d at 306. Given that Poupore limited itself to cases with onsets of disability after August 26, 2003, Curry is still good law for cases with onsets before that date. Moreover, it should be noted that the outcome here would be the same regardless of the answer to the retroactivity question raised in Poupore.

[3] The Court does not reach the issue of whether the ALJ properly decided that Brown does not have a listed impairment, pursuant to the third step of the SSA analysis.

work is the least rigorous of the five categories of work recognized by SSA regulations. These include 'very heavy', 'heavy,' 'medium,' 'light,' and 'sedentary.'" Schaal v. Apfel, 134 F.3d 496, 501 n.6 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2). Sedentary work "generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour work day." Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996). It also involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a).

Within this framework, the Court finds, fundamentally, that the ALJ's determination was not based on correct legal principles as clearly articulated by SSA regulations and related case law. First and most importantly, the ALJ failed to apply the SSA's treating physician rule. See Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003). Treating physicians' reports shall be given controlling weight where they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(d)(2). Brown's treating physicians were Dr. Langman and Dr. Batash. Their reports are voluminous and well-supported by diagnostic test results, including several MRI scans showing herniated and bulging discs, as well as nerve conduction studies showing radiculopathy stemming from those disc problems. The ALJ, however, dismissed those treating physicians' reports in a single paragraph of his ten-page opinion, apparently finding Dr. Langman's reports too repetitive and Dr. Batash's reports too inconsistent. (Tr. 17.) Yet there is no support in the SSA regulations for such arbitrary discounting of treating physicians' reports, especially in a case such as this one, where those reports were clearly corroborated by lab results showing unmistakable damage to Brown's spine and, as a result, his nerves. Indeed, even if the ALJ felt that the treating physicians' clinical

7

records were inadequate in some way, it was his duty to seek additional information from those doctors. See Schaal, 134 F.3d at 505.[4] The ALJ has an affirmative duty to develop the administrative record, even where a claimant is represented by counsel, as Brown was here, and as a result, "an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." Rosa, 168 F.3d at 79.

Instead, the ALJ placed far greater reliance on the one-time evaluations Brown received and the testimony of Dr. Cohen, the SSA medical expert. The law is clear, however, that one-time assessments should not be considered "substantial evidence" under the treating physician rule of 20 C.F.R. § 404.1527(d)(2). See Spielberg v. Barnhart, 367 F. Supp. 2d 276, 283 (E.D.N.Y. 2005). Moreover, to the extent that the ALJ relied upon one-time evaluations by physicians examining at the behest of the USPS and Department of Labor, which were contesting Brown's worker's compensation claim, such reliance was also improper. See Cullinane v. Sec'y of Dept. of Health & Human Servs. of U.S., 728 F.2d 137, 139 (2d Cir. 1984) ("It can hardly be questioned that a report submitted by a witness whose self-interest may well have dictated its contents cannot and should not be permitted to constitute substantial evidence."); Odorizzi v. Sullivan, 841 F. Supp. 72, 78 (E.D.N.Y. 1993) (discounting "reports at the behest of a party with a vested interest in minimizing plaintiff's impairments"). The ALJ's heavy reliance on Dr. Cohen's testimony also contravened the clear guidance of SSA regulations, as Dr. Cohen was a nonexamining source whose opinions are to be accorded less

---

[4] This is also true of the Commissioner's contention, on briefing before the Court, that Dr. Langman's findings of disability should be disregarded because they were written for Brown's worker's compensation claim. (Comm'r's Br. 20.) If Dr. Langman's opinions with regard to disability in the worker's compensation context are arguably inadequate in the SSA context, then the responsibility for eliciting additional clarifying information lies with the ALJ.

8

weight than those of examining sources and especially treating sources. See 20 C.F.R. § 404.1527.

Further, even if the ALJ had applied correct legal principles in not giving controlling weight to the treating physicians' reports, the ALJ also failed to follow SSA guidelines requiring the consideration of several specific factors in determining how much weight those reports should receive. See 20 C.F.R. § 404.1527(d)(2); Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008). The ALJ must consider the "[l]ength of the treatment relationship and the frequency of examination," the "[n]ature and extent of the treatment relationship," the "relevant evidence . . . , particularly medical signs and laboratory findings" supporting the opinion, the consistency of the opinion with the record as a whole, and whether the physician is a specialist in the area covering the particular medical issues. 20 C.F.R. § 404.1527(d). After considering these factors, the ALJ must "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion." Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004). SSA regulations state that the agency "will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion." 20 C.F.R. § 404.1527(d)(2). The ALJ's decision here failed to provide such comprehensive rationale for discounting the treating physicians' reports, providing only a cursory explanation and never mentioning any of the factors in 20 C.F.R. § 404.1527(d), despite the fact that application of those factors almost certainly favors according a great deal of weight to the reports of Dr. Langman and Dr. Batash, two specialists who have treated Brown extensively and whose reports are consistent with both the MRI scans and nerve conduction studies. This failure, by itself, constitutes legal error warranting remand. See Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (failure to provide "good reasons for not crediting the opinion of a claimant's treating physician is a ground for

9

remand"); Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998) ("Commissioner's failure to provide 'good reasons' for apparently affording no weight to the opinion of plaintiff's treating physician constituted legal error.")

Additional legal errors plague the ALJ's determination. One such error was the ALJ's apparent overreliance on his observations of Brown's condition during the hearing, particularly the observation that Brown "sat and squirmed." (Tr. 16.) The "sit and squirm" test has been rejected by the Second Circuit as impermissible, and observations by the ALJ of any sort shall be accorded only limited weight, "since the ALJ is not a medical expert." Spielberg v. Barnhart, 367 F. Supp. 2d 276, 282 (E.D.N.Y. 2005) (citing Aubeuf v. Schweiker, 649 F.2d 107, 113 (2d Cir. 1981)); see also Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 643 (2d Cir. 1983).

Another legal error was the excessive weight given to Brown's performance of basic daily activities. (Tr. 19.) It is well-settled law in this Circuit that such activity does not, in itself, contradict a claim of disability, "as people should not be penalized for enduring the pain of their disability in order to care for themselves." Woodford v. Apfel, 93 F. Supp. 2d 521, 529 (S.D.N.Y. 2000); see also Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) ("We have stated on numerous occasions that a claimant need not be an invalid to be found disabled under the Social Security Act.") (quotation omitted). Moreover, even to the extent that Brown's daily activities were properly considered, the ALJ failed to place the burden on the Commissioner to show that those activities were evidence of residual functional capacity to perform full-time sedentary work. See, e.g., Burgess, 537 F.3d at 125; Balsamo v. Chater, 142 F.3d 75, 81-82 (2d Cir. 1998); Carroll, 705 F.2d at 643. In other words, there is no indication in the ALJ's decision that the Commissioner was required to reckon how Brown's occasional outings, relationship

with a girlfriend, and episodic driving add up to an ability to sit upright for six hours every workday as required by SSA regulations.[5] Similarly, the Commissioner was never required to satisfy the burden of showing how Brown's medical record indicated an ability to perform sedentary work. The ALJ relied very heavily on the opinions Dr. Cohen, but when Dr. Cohen was asked during the hearing for the grounds on which he based his opinions, he answered only that he "d[id] not see any evidence in the file that would suggest that the impairment would be severe enough to cause that kind of restriction." (Tr. 1074.) Dr. Cohen produced no affirmative evidence of Brown's capabilities, and the ALJ did not require any.[6] This failure to shift the

---

[5] Even if such a burden had been placed on the Commissioner, that burden could not have been sustained by substantial evidence in the record. Rather than showing a pattern of *daily* activity sufficient to show an ability to perform full-time sedentary work, Brown's testimony reveals an individual who manages only *occasional* episodes of activity. See Hussnatter v. Astrue, No. ___, 2010 WL 3394088, at *23 (E.D.N.Y. Aug. 20, 2010) (distinguishing between daily and occasional activity). For example, Brown does not clean his own apartment, and his shopping is "mainly" handled by others. (Tr. 1056.) His mother fixes most if not all of his food. (Tr. 1060.) He is limited to shopping for "small items" such as "soap, toothpaste, things of that nature," because anything more would be too much for him to carry. (Tr. 1057.) Rather than attend his investment club meetings "monthly" as claimed by the Commissioner (Comm'r's Br. 3), Brown testified he had attended the meetings only three or four times in the previous year. (Tr. 1060.) He had been to church with his mother "maybe two or three times in maybe a couple of years." (Tr. 1069.) This record does not contain substantial evidence for a finding of residual functional capacity to perform sedentary work. See Balsamo, 142 F.3d at 81-82; Carroll, 705 F.2d at 643.

Moreover, there is no substantial evidence in the record for the ALJ's finding that Brown has a "tendency to exaggerate the facts in his favor." (Tr. 19.) Brown's testimony about his erstwhile girlfriend reveals no exaggeration or other indicia of a lack of credibility, and the only other evidence that could raise doubts as to Brown's veracity were the examination reports at the behest of USPS and the Department of Labor, which stated that Brown exaggerated his symptoms. However, such reports, prepared by Brown's former employer in adversarial worker's compensation proceedings, hardly constitute substantial evidence of incredibility. See Cullinane, 728 F.2d at 139; Odorizzi, 841 F. Supp. at 78.

[6] Indeed, even under the new Poupore standard, see n.2 infra, this complete lack of supporting evidence for the medical expert's opinions renders the ALJ's reliance on those opinions legally erroneous under SSA regulations. See 20 C.F.R. § 404.1527(d)(3) ("[B]ecause nonexamining sources have no examining or treating relationship with you, the weight we

11

burden of proof onto the Commissioner constituted additional legal error warranting reversal of the ALJ's decision.

## III. CONCLUSION

Given that the ALJ's determination was based on incorrect legal principles, including failure to supplement the record affirmatively, the proper course is to remand this case. See Schaal, 134 F.3d at 505. Further, on remand, the ALJ shall develop and update the record to include evidence of Brown's condition and medical history since 2005; this shall also include supplementation of the record regarding the condition of Brown's left knee, which received only scant consideration at the 2005 hearing and in the ALJ's opinion.

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is denied and Brown's cross-motion is granted to the extent that this case is remanded for further administrative proceedings consistent with this Memorandum and Order.

The Clerk of the Court is directed to enter judgment and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
March 15, 2011

s/ENV

ERIC N. VITALIANO
United States District Judge

---

will give their opinions will depend on the degree to which they provide supporting explanations for their opinions.")